# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40512

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2015

Lyle W. Cayce
Clerk

MARTIN RESOURCE MANAGEMENT CORPORATION,

        Plaintiff–Appellant,

v.

AXIS INSURANCE COMPANY,

        Defendant–Appellee.

Appeals from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

      This case centers on the interpretation of an excess-insurance-policy provision designed to cover losses exceeding the limits of a primary-insurance policy. Plaintiff–Appellant Martin Resource Management Corporation ("MRMC") purchased excess insurance from Defendant–Appellee AXIS Insurance Company ("AXIS"). After suffering losses in a state lawsuit, MRMC sued in federal court to recover under its primary- and excess-insurance policies. MRMC eventually settled with its primary insurer for less than the liability limit in the primary policy. AXIS moved for summary judgment, arguing that settlement for less than the underlying policy limit does not

No. 14-40512

trigger coverage under the terms of the AXIS policy. Summary judgment was granted in favor of AXIS, and MRMC appealed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this insurance dispute, MRMC seeks coverage for the cost of defending a separate stock-dilution suit filed in Texas state court. MRMC purchased a primary-insurance policy from Zurich American Insurance Company ("Zurich") and excess-insurance policies from AXIS and Arch Insurance Company ("Arch"). All three policies have a liability limit of $10 million. The AXIS coverage begins only after the underlying Zurich policy has been "exhausted by actual payment under [the Zurich policy]." The Arch policy is the "second" excess policy and provides insurance in excess of the Zurich and AXIS policies. The sole question in this appeal is whether the Zurich policy was exhausted, triggering the AXIS coverage.

After Zurich denied coverage of defense costs from the underlying litigation, MRMC filed the instant suit seeking coverage under the terms of the Zurich, AXIS, and Arch policies. Zurich settled with MRMC for a release of any past, present, or future claims under the policy. The settlement obligated Zurich to pay MRMC $6 million, an amount that was below Zurich's $10 million liability limit. As a result of the settlement and release, Zurich has not paid MRMC up to the full liability limit.

Based on this settlement, AXIS moved for summary judgment, arguing that MRMC could not exhaust the underlying limit in the primary policy because Zurich has not paid the full limit of its liability under the policy.[1] MRMC filed a cross-motion for summary judgment, contending that the AXIS policy allows for MRMC to "fill the gap" by paying the difference between

---

[1] Arch also moved for summary judgment but reached a settlement with MRMC before the magistrate judge ruled on its motion. The Arch policy is not at issue in this appeal.

No. 14-40512

Zurich's $10 million liability limit and the below-limit settlement. The magistrate judge[2] granted summary judgment for AXIS, holding that "the [AXIS] policy language clearly requires that the underlying insurer (*i.e.*, Zurich) must actually pay out its full liability limit (*i.e.*, $10 million) to [MRMC] to trigger coverage from AXIS." MRMC timely appealed.

## II. STANDARD OF REVIEW

This Court has jurisdiction to review a district court's final judgment pursuant to 28 U.S.C. § 1291. This Court reviews de novo a district court's grant of summary judgment, viewing "all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). This Court applies the same standard "as the district court in the first instance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "We review a district court's interpretation of an insurance contract de novo because it is a matter of law." *Kinsale Ins. Co. v. Georgia-Pac., L.L.C.*, 795 F.3d 452, 454 (5th Cir. 2015).

In a diversity case, this Court applies "the substantive law of the forum state, here, Texas." *Citigroup, Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011). "Under Texas law, the general rules of contract interpretation govern a

---

[2] The parties consented to referral to a magistrate judge for proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).

No. 14-40512

court's review of an insurance policy." *Id.* A court's "primary goal is to give effect to the written expression of the parties' intent." *Id.* Where a policy "is not ambiguous, . . . courts must construe it as a matter of law." *Id.* A policy is not ambiguous if "the policy language has only one reasonable interpretation." *Id.* "A reasonable construction is one that gives meaning to the disputed language in the context of the writing, not one that strips the language of meaning altogether." *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234, 1238 (5th Cir. 1986). If a policy "is susceptible to two or more reasonable interpretations, it is ambiguous, and [courts] must resolve the uncertainty by adopting a construction that favors the insured as long as that construction is not unreasonable." *Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 343 (5th Cir. 2010) (footnotes omitted) (applying Texas law). In other words, when construing an insurance contract, the court must determine whether the contract is ambiguous and, if so, whether the insured's interpretation is reasonable.

## III. DISCUSSION

Section I of the AXIS policy states:

> The Insurance afforded under this Policy shall apply only after all applicable Underlying Insurance[3] . . . has been exhausted by actual payment under such Underlying Insurance, and shall only pay excess of any retention or deductible amounts provided in the Primary Policy and other exhausted Underlying Insurance.

The magistrate judge found that the language of the AXIS policy was unambiguous and that it requires that Zurich actually pay $10 million to MRMC to trigger AXIS coverage. MRMC argues that the Zurich policy was "exhausted by actual payment" by "MRMC's [below-limit] settlement with

---

[3] The Zurich policy is the primary policy and the only Underlying Insurance listed in the AXIS policy.

No. 14-40512

Zurich and MRMC's payment of amounts greatly exceeding the remaining policy limits." That is, MRMC contends that it is reasonable to interpret the AXIS policy to allow a below-limit settlement to exhaust the Zurich policy where MRMC pays the difference between Zurich's liability limit and the settlement amount. AXIS counters that "actual payment *under such Underlying Insurance*" shows that the $10 million must be paid by Zurich because only Zurich can pay out under its policy.

We hold that the AXIS policy unambiguously precludes exhaustion by below-limit settlement. Our analysis begins with an overview of the governing case law. In *Citigroup, Inc. v. Federal Insurance Co.*, this Court found that numerous excess-coverage provisions unambiguously required the underlying insurers to pay the full amount of the underlying limits. 649 F.3d at 371–73. The insured, like MRMC here, had entered into a settlement with the primary insurer for less than its liability limit. *Id.* at 370.

Of the policies discussed in *Citigroup*, the "Steadfast policy" presents the language closest to the AXIS provision. It provided that excess-insurance coverage "attaches '[i]n the event of the exhaustion of all of the limit(s) of liability of such "Underlying Insurance" solely as a result of payment of loss thereunder.'" *Id.* at 373 (alteration in original).

This Court emphasized that two aspects of the Steadfast policy made clear that the policy is not triggered until the primary insurer pays the full amount of its liability limits. First, the policy's inclusion of the word "all" indicated that "settlement for less than the underlying insurer's limits of liability does not exhaust the underlying policy." *Id.* Second, the use of the phrase "payment of loss" in the provision meant that "the underlying insurer must make *actual* payment to the insured in order to exhaust the underlying policy." *Id.*

No. 14-40512

In *Citigroup*, this Court quoted with approval *Comerica Inc. v. Zurich American Insurance Co.*, 498 F. Supp. 2d 1019 (E.D. Mich. 2007), in which a Michigan district court read "the phrase 'payment of losses' to mean that *actual* payment of losses by the insurer was necessary to trigger the excess coverage." *Citigroup*, 649 F.3d at 373. This was so because "settlements that extinguish liability up to the primary insurer's limits, and agreements to give the excess insurer 'credit' against a judgment or settlement up to the primary insurer's liability limit are not the same as *actual payment*." *Id.* (quoting *Comerica*, 498 F. Supp. 2d at 1032 (emphasis added)). Thus, "when a policy requires 'payment' to trigger coverage, actual payment must be made, and settlement does not meet this requirement." *Id.* (quoting *Comerica*, 498 F. Supp. 2d at 1032). This Court then concluded that because the Steadfast policy (1) used the terms "all" in reference to the underlying insurance and (2) required actual payment by the insurer, a "settlement with [the underlying insurer] for less than the limit of liability did not trigger Steadfast's excess coverage." *Id.*

In light of *Citigroup*,[4] the AXIS policy is unambiguous as to who must pay and the amount that must be paid in order to exhaust the Zurich policy. With regard to who pays, exhaustion requires Zurich to pay under its policy. The phrase "exhaustion by actual payment under [the Zurich Policy]" makes

---

[4] We are bound by *Citigroup*'s interpretation and application of Texas law to insurance contract disputes. *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 832 (5th Cir. 2000) ("[A] prior panel's interpretation of state law has binding precedential effect on other panels of this court absent a subsequent state court decision or amendment rendering our prior decision clearly wrong."). Appellant has not cited, and we have not found, a Texas state court decision that has held *Citigroup*'s analysis of Texas contract law to be clearly wrong. To the contrary, a recent state court of appeals decision regarding an excess-insurance contract quoted *Citigroup* at length but did not disagree with its interpretation or application of Texas law. *Plantation Pipe Line Co. v. Highlands Ins. Co.*, 444 S.W.3d 307, 314 (Tex. App.—Eastland 2014, pet. filed). Rather, the state court concluded that *Citigroup*'s reasoning was not dispositive because the policy at issue "did not contain language like the parties agreed to in the policies in *Citigroup*." *Id.* As explained below, we find that the operative portion of the AXIS policy contains language substantively similar to the Steadfast policy in *Citigroup*.

No. 14-40512

clear that Zurich must make payments to MRMC pursuant to its contract. Even if we construed Zurich's below-limit settlement to constitute "actual payment," MRMC's contention that MRMC's "gap" payments can also constitute "actual payments under [the Zurich contract]" is not a reasonable interpretation of the contract. *See id.* (finding that a contract requiring "payment of loss [under the Underlying Insurance]" establishes that the underlying insurer must make payment to the insured).

With regard to the amount that must be paid, it is unreasonable to construe the AXIS policy to allow exhaustion by a below-limit settlement. The AXIS policy requires "actual payment" of "*all* applicable Underlying Insurance." The AXIS policy defines "Underlying Insurance" as the policies stated in the endorsement section. The endorsement section, in turn, only contains the Zurich policy, which it identifies as MRMC's primary policy with a liability limit of $10 million. The word "all" makes clear that, under the AXIS policy, a settlement does not exhaust the Zurich policy when it is for less than the limit of liability.

Our holding is consistent with the ruling of state courts that have analyzed language that is substantively identical to the AXIS policy. *See JP Morgan Chase & Co. v. Indian Harbor Ins. Co.*, 947 N.Y.S.2d 17 (App. Div. 2012). In *JP Morgan*, a New York appellate court analyzed numerous excess-insurance policies, including one which stated that the excess insurance "shall apply only after all applicable Underlying Insurance . . . has been exhausted by actual payment under such Underlying Insurance." *Id* at 21. Applying Illinois law, the court found that the policies "unambiguously required the insured to collect the full limits of the underlying polices before resorting to excess insurance." *Id.* at 23.

We are not persuaded by an out-of-circuit district court's decision that held the exact AXIS excess-insurance policy at issue to be ambiguous. *See*

7

No. 14-40512

*Maximus, Inc. v. Twin City Fire Ins. Co.*, 856 F. Supp. 2d 797, 801–02 (E.D. Va. 2012). Applying Virginia law, the *Maximus* court noted that AXIS's policy did not define the clause "actual payment under such Underlying Insurance." *Id.* at 801. The court concluded that the policy's exhaustion clause did not unambiguously preclude the insured party from filling the gap after a below-limit settlement because the policy did not explicitly specify "actual payment of the policy limit *by the insurance carrier.*" *Id.* at 802.

The *Maximus* court devoted the bulk of its analysis to contrasting the AXIS policy with other excess-insurance policies that courts had held precluded exhaustion by below-limit settlement. Such contracts, according to the court, were "easily distinguishable" from the AXIS policy because the exhaustion clause in those cases explicitly identified the insurer as the party that must make the payment.[5] *Id.* at 802–03. In support, the court in *Maximus* cited our decision in *Citigroup* and quoted only two of the four provisions analyzed therein, both of which expressly stated that coverage did not attach until the insurer paid or was obligated to pay the full liability limit. *Id.* at 803. As the *Maximus* court noted, one provision analyzed in *Citigroup* provided that coverage attached only after "the total amount of the Underlying Limit of Liability has been paid in legal currency *by the insurers*"; the other provision it cited established that the "policy was triggered when [the] *underlying insurers 'shall have agreed to pay* . . . the full amount of its respective limits of liability." *Id.* (quoting *Citigroup*, 649 F.3d at 372) (emphasis added).

Yet *Citigroup* compels us to reject *Maximus*'s rule of interpretation, namely, that an exhaustion clause is ambiguous if it does not expressly specify

---

[5] With regard to the *Maximus* court's interpretative method of comparing unrelated contracts, we agree with the Second Circuit's observation that "the fact that one contract is even clearer than another does not make the other contract ambiguous." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 93 n.17 (2d Cir. 2013).

No. 14-40512

which party must make the requisite payments. As noted, *Citigroup* analyzed the Steadfast policy, yet *Maximus* did not quote or mention it. *Compare Citigroup*, 649 F.3d at 373, *with Maximus*, 856 F. Supp. 2d at 803. The Steadfast policy, like the AXIS policy, did not expressly identify the underlying insurer as the party obligated to make the "actual payment." *Citigroup*, 649 F.3d at 373. It instead provided that the excess insurance attached where there was exhaustion "solely as a result of payment of loss [under the Underlying Insurance]." *Id. Citigroup* explained that the phrase "payment . . . [under the Underlying Insurance]" "establishes that the underlying insurer must make actual payment to the insured." *Id.* Thus, the AXIS policy's language requiring exhaustion by "actual payment under [Zurich's Policy]" is unambiguous: exhaustion requires Zurich to make actual payment to MRMC.

*Maximus* also fails to persuade because it analyzed the Insuring Agreement without reference to the other provisions of the AXIS policy. The only AXIS provision cited in *Maximus* was Section I, the Insuring Agreement. Yet Texas law disfavors isolated interpretations of contract provisions. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008) ("No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." (alteration in original) (internal quotation marks omitted)).

We find that the other provisions of the AXIS policy confirm that it unambiguously bars MRMC from exhausting Zurich's policy by paying the difference between the underlying limit of liability and the below-limit settlement. Section IV of the AXIS policy—"Reduction or Exhaustion of Underlying Limits"—states in pertinent part:

> A. If the Underlying Limits are partially reduced solely due to actual payment under the Underlying Insurance, this Policy shall continue to apply as excess insurance over the remaining Underlying Limits.

> B. If the Underlying Limits are wholly exhausted solely due to
> actual payment under the Underlying Insurance, this Policy shall
> continue to apply as primary insurance . . . .

MRMC contrasts the language used in Section I—"exhausted by actual
payment"—with the language of Section IV(B)—"*wholly* exhausted *solely* due
to actual payment." MRMC argues that the exclusion of the italicized words
from Section I shows that "exhausted by actual payment" in Section I can
"occur through a combination of (1) actual payment [by MRMC] and (2)
settlement."

We find MRMC's argument unavailing. The phrase "wholly exhausted"
in Section IV(B) must be contrasted with the phrase "partially reduced" in
Section IV(A). The policy uses different wording to distinguish the effects of
exhaustion from the mere reduction of the limits of liability. It does not create
an ambiguity as to whether exhaustion in Section I includes a below-limit
settlement. Indeed, the use of the term "all" in Section I clarifies that the
entirety of the underlying insurance must be exhausted in order to trigger
AXIS's coverage. *See Citigroup*, 649 F.3d at 373.

MRMC also points to Section V, contending that it is reasonable to
construe that section to permit MRMC to make gap payments in this case.
Section V(C) of the AXIS policy, titled "Limits of Liability," provides in
pertinent part:

> If any Underlying Insurer fails to make payments under [its]
> Underlying Insurance for any reason whatsoever, including
> without limitation the insolvency of such Underlying Insurer, then
> the Insureds shall be deemed to have retained any such amounts
> which are not so paid.

MRMC contends this section supports its reading because it contemplates
excess coverage where Zurich *fails to pay* the full underlying limit by treating

No. 14-40512

Zurich's unpaid amounts as a retention.[6] Specifically, MRMC highlights the apparent broadness of the phrase "for any reason whatsoever." MRMC's argument is that Section V(C) encompasses instances where, as here, Zurich does not pay the full policy limit because MRMC has agreed to release Zurich of further obligations pursuant to a below-limit settlement.

MRMC's emphasis on the phrase "for any reason whatsoever" is misplaced. The threshold question here is whether Zurich has "fail[ed] to make payments under" its policy. MRMC bargained for a below-limit settlement with Zurich and in exchange released Zurich from further obligations under Zurich's policy. Because MRMC agreed to absolve Zurich, it is foreclosed from arguing that Zurich failed in its obligations to make full payments under its policy. Section V(C) is inapposite in this case because the below-limit settlement does not constitute a "fail[ure] to make payment under [Zurich's policy]."

Finally, although the parties dispute the applicability of *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928) and the public policy concerns it articulated, we find it unnecessary to reach the issue. "*Zeig* stands for the proposition that, if an excess insurance policy ambiguously defines 'exhaustion,' settlement with an underlying insurer constitutes exhaustion of the underlying policy, for purposes of determining when the excess insurance attaches."[7] *Citigroup*, 649 F.3d at 371. This Court and Texas state courts have refused to consider whether *Zeig* applies when the policy at issue is unambiguous. *See id.*; *Plantation Pipe Line Co. v. Highlands Ins. Co.*, 444 S.W.3d 307, 314 (Tex. App.—Eastland 2014, pet. filed) (declining to decide "as a matter of first impression, whether the *Zeig* doctrine applies in the State

---

[6] Under Section I, AXIS "shall only pay excess of any retention or deductible amounts provided in the Primary Policy and other exhausted Underlying Insurance."

[7] As the Second Circuit has observed, *Zeig* interpreted and applied "freestanding federal common law" that the Supreme Court abrogated in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *Ali*, 719 F.3d at 92, n.16.

No. 14-40512

of Texas" because the excess-insurance contract at issue "is not ambiguous"). We do not have to make an *Erie* guess whether *Zeig* controls because the AXIS policy is unambiguous. Under the plain terms of the contract, the AXIS policy is not triggered where MRMC pays the difference between Zurich's liability limit and a below-limit settlement releasing Zurich of any further obligations.[8]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment in favor of AXIS.

---

[8] Because the contract is unambiguous, we do not need to address the competing public policy concerns that the parties raised. Under Texas law, "[a] court should not decide a public policy question without first evaluating the contract language. Only if a contractual provision violates public policy should a court not enforce it." *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 182 (Tex. App.—Fort Worth 2004, pet. denied) (citing *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 878 (Tex. 1999)). MRMC does not contend that an excess-insurance contract that unambiguously precludes exhaustion by below-limit settlements violates Texas's public policy.